# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# ORLANDO DIVISION

**STEPHEN EUBANKS,**

      **Plaintiff,**

**v.**                                                     **Case No: 6:16-cv-437-Orl-DCI**

**COMMISSIONER OF SOCIAL SECURITY,**

      **Defendant.**

## MEMORANDUM OF DECISION

Stephen Eubanks (Claimant) appeals from a final decision of the Commissioner of Social Security (the Commissioner) denying his application for supplemental security income. Docs. 1; 18 at 1; R 17. Claimant argues that the Administrative Law Judge (the ALJ) erred by: 1) failing to properly weigh the opinion of Claimant's treating psychiatrist; 2) failing to properly characterize Claimant's visual limitations; and 3) posing a hypothetical question to the vocational expert that, allegedly, did not adequately reflect Claimant's limitations. Doc. 18 at 2. Claimant argues that the matter should be reversed and remanded for an award of benefits or, in the alternative, for further proceedings. *Id*. at 19-20. For the reasons set forth below, the Commissioner's final decision is **REVERSED** and **REMANDED** for further proceedings.

## I.    THE ALJ'S DECISION.

On October 10, 2013, Claimant protectively filed an application for supplemental security income. R. 17. Claimant alleged a disability onset date of September 20, 2013. *Id*. The ALJ issued his decision on March 25, 2015. R. 17-28. The ALJ found that Claimant suffered from the following severe impairments: scoliosis, a left eye impairment, and a bi-polar disorder. R. 19. The

ALJ found that Claimant had a residual functional capacity (RFC) to perform less than a full range of medium work[1] as defined by 20 C.F.R. § 416. 967(c), with following additional limitations:

> [H]e can only occasionally perform tasks requiring far visual acuity. He can perform only work involving simple tasks and following simple instructions in an isolated environment, where he would seldom (defined as less than 1/3 of the work day) have contact with supervisors, co-workers and the public.

R. 21. In light of this RFC, the ALJ found Claimant was capable of performing various jobs in the national economy – Claimant had no past relevant work. R. 26-27. In light of the foregoing, the ALJ found that Claimant has not been disabled since his alleged onset date, October 10, 2013. R. 27.

## II. **STANDARD OF REVIEW**.

"In Social Security appeals, [the court] must determine whether the Commissioner's decision is supported by substantial evidence and based on proper legal standards." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1178 (11th Cir. 2011) (quotations omitted). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla – i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence

---

[1] Medium work is defined as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds. If someone can do medium work, we determine that he or she can also do sedentary and light work." 20 C.F.R. § 416.967(c).

preponderates against the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The Court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560. The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III.  ANALYSIS.

Claimant maintains that the ALJ failed to properly weigh the opinions of his treating psychiatrist, Dr. Earl Taitt, M.D., primarily because the treatment notes from Dr. Taitt were illegible. Doc. 18 at 7-14. Claimant asserts that it is impossible to determine "how or even whether" Dr. Taitt's records were considered, or what his opinions were. *Id*. Therefore, Claimant argues that the ALJ's decision is not supported by substantial evidence. *Id*.

The Commissioner's position is that the opinions of Dr. Taitt were discussed and considered by the ALJ, and that Claimant's "argument that the illegibility of Dr. Taitt's treatment notes prevented the ALJ from fully considering them is no more than mere speculation" and, thus, "is unavailing." Doc. 20 at 9. While the Commissioner notes that the ALJ never stated that Dr. Taitt's notes were illegible or difficult to read, the Commissioner does not actually assert that Dr. Taitt's notes *are* legible.

At step four, the ALJ assesses the claimant's RFC and ability to perform past relevant work. *Phillips*, 357 F.3d at 1238. The RFC "is an assessment, based upon all of the relevant evidence, of a claimant's remaining ability to do work despite his impairments." *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997). The ALJ is responsible for determining the

claimant's RFC.  20 C.F.R. § 416.946(c).  In doing so, the ALJ must consider all relevant evidence, including, but not limited to, the medical opinions of treating, examining and non-examining medical sources.  *See* 20 C.F.R. § 416.945(a)(3); *see also Rosario v. Comm'r of Soc. Sec.*, 490 F. App'x 192, 194 (11th Cir. 2012).[2]

The ALJ must consider a number of factors in determining how much weight to give each medical opinion, including: 1) whether the physician has examined the claimant; 2) the length, nature, and extent of the physician's relationship with the claimant; 3) the medical evidence and explanation supporting the physician's opinion; 4) how consistent the physician's opinion is with the record as a whole; and 5) the physician's specialization.  20 C.F.R. § 416.927(c).

A treating physician's opinion must be given substantial or considerable weight, unless good cause is shown to the contrary.  *See* 20 C.F.R. § 416.927(c)(2) (giving controlling weight to the treating physician's opinion unless it is inconsistent with other substantial evidence); *see also Winschel*, 631 F.3d at 1179.  There is good cause to assign a treating physician's opinion less than substantial or considerable weight, where: 1) the treating physician's opinion is not bolstered by the evidence; 2) the evidence supports a contrary finding; or 3) the treating physician's opinion is conclusory or inconsistent with the physician's own medical records.  *Winschel*, 631 F.3d at 1179.

As an initial matter, and critical to the Court's analysis, Dr. Taitt is the only treating physician whose treatment notes, records, or opinions were before the ALJ.  Claimant had no other treating physicians or other medical sources.  Aside from Dr. Taitt's records, the evidence before the ALJ consisted of Claimant's testimony, reports submitted by Claimant and his father, prison intake screening records, short-term hospitalization records, a consultative psychological

---

[2] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority. *See* 11th Cir. R. 36-2.

evaluation, opinions from three state agency mental health consultants, and the findings from two consultative examinations. R. 22-25. Indeed, the record in this case is a relatively short 404 pages.

Dr. Taitt began treating Claimant in July 2013, and continued that treatment through at least June 2014, seeing Claimant on approximately thirteen separate occasions. R. 363-74; 383-390. Dr. Taitt's treatment notes consist of Dr. Taitt's handwritten notations placed upon pre-printed forms. *Id*. In some instances, Dr. Taitt circled pre-printed responses or checked boxes corresponding to pre-printed options, and in other sections he hand-wrote responses in spaces designated for his "Assessment" or "Plan," amongst other things. *Id*. On occasion, Dr. Taitt's handwritten notes also appeared in the margins of these pre-printed forms. *Id*.

In considering Dr. Taitt's treatment notes, the ALJ wrote the following:

> Evidence from Earl Taitt, M.D., the claimant's treating psychiatrist, indicates that the claimant initially experienced noticeable symptom improvement with Seroquel. Observations and findings from the initial evaluation on July 2, 2013 reveal the claimant was cooperative, fully oriented, and could pay attention and remember, hut he was also preoccupied and disheveled, with abnormal motor behavior, fair concentration, and rambling speech. Dr. Taitt diagnosed a Bi-Polar I disorder, did not diagnose any kind of personality or psychotic disorder, and assigned a GAF score of 50. Subsequent progress notes through 8/27/13 document sustained improvement: for a couple of months, the claimant's motor activity was consistently normal, he had good concentration, attention and memory; his speech was logical, his thought content was normal, and his appearance was normal. Dr. Taitt also noted the claimant had above average intelligence (Exhibit 9F).
>
> Dr. Taitt's progress notes show the claimant's symptoms worsened in September 2013, and that the claimant's mood varied from appointment to appointment through June 2014, when evidence from Dr. Taitt ends. Dr. Taitt's findings and observations also illustrate that the claimant's mood swings affect his ability to concentrate and interact with others, but do not totally preclude either function. Even when the claimant has been physically restless, hyperactive, irritable, and angry, he has been attentive and cooperative with Dr. Taitt, and has retained a fair ability to remember and concentrate. He has consistently denied homicidal or

> suicidal thoughts and his GAF score has remained at 50. Dr. Taitt has gradually increased the claimant's dosage of Seroquel in response to increased symptoms, and the claimant has reported no medication side effects (Exhibits 9F, 11F and 12F).
>
> Considering the opinion evidence relevant to the claimant's mental functioning, the undersigned gives some weight to the GAF scores Dr. Taitt assigned. Although a GAF score can offer some evidence regarding the severity of the claimant's mental impairment, it is not dispositive on the issue. A GAF score is a mere snapshot of the claimant's ability to function at the particular time of the assessment. It does, however, include factors such as legal, housing or financial problems that are not properly part of the disability analysis under the Social Security Act. That said, a GAF score of 50, indicating moderate problems in social or occupational functioning, is consistent with Dr. Taitt's observations and findings that the claimant's ability to concentrate and remember goes from "good" to "fair" depending on his mood, and that his mood stability, appearance and his ability to maintain eye contact are likewise variable. Great weight is given to Dr. Taitt's diagnosis of Bi-Polar disorder with no secondary diagnoses (Exhibit 9F/6), as he is a psychiatrist and personally treated the claimant for at least 12 months. Furthermore, Dr. Taitt's notes show the claimant's mood varies between hyperactivity and depression, consistent with his diagnosis.

R. 24.

Thus, the ALJ considered and weighed two opinions from Dr. Taitt. First, the ALJ gave "great weight" to Dr. Taitt's diagnosis of Bi-Polar disorder with no secondary diagnoses. *Id*. Second, the ALJ gave "some weight" to the GAF scored that Dr. Taitt assigned to Claimant. *Id*. In giving less than controlling weight to those GAF scores, the ALJ noted that while a GAF score can offer some evidence of Claimant's mental impairment, it is not dispositive. *Id*. The ALJ went on to state that a GAF score is a "mere snapshot" of Claimant's current functioning, and includes some facts not relevant to the social security determination at hand. *Id*. The ALJ explained that "a GAF score of 50, indicating moderate problems in social or occupational functioning," was

consistent with Dr. Taitt's observations and findings in his treatment notes. *Id*. The ALJ discussed no other opinion from Dr. Taitt.

As recognized by Claimant in his brief, while there does not appear to be an opinion from the Eleventh Circuit directly on point, the Second and Eighth Circuits have specifically held that the illegibility of important evidentiary material can warrant a remand for clarification and supplementation. *Miller v. Heckler*, 756 F.2d 679 680-81 (8th Cir. 1985); *Brissette v. Heckler*, 730 F.2d 548, 550 (8th Cir. 1984); *see also Cutler v. Weinberger*, 516 F.2d 1282, 1285 (2d Cir. 1975) (illegible medical reports provide reviewing court with no way to determine whether the Secretary fully understood the medical evidence before him). In *Bishop v. Sullivan,* 900 F.2d 1259, 1262 (8th Cir.1990), pertinent medical evidence was submitted to the ALJ prior to the hearing consisting of sixty-five pages, twenty-six of which were illegible because of poor copy quality or handwriting. *Id*. There, the Eighth Circuit held:

> It is the ALJ's duty to develop the record fully and fairly, even in cases in which the claimant is represented by counsel. *Dozier v. Heckler*, 754 F.2d 274, 276 (8th Cir.1985). Based on the record before us, we cannot determine whether Bishop's combined impairments following his back surgery meet or equal a listed impairment or whether he is otherwise disabled. We doubt that the ALJ could properly decipher all the medical reports any better than we could. On remand, the parties should determine which of the existing medical records are relevant and provide the ALJ with legible copies of these records or direct interrogatories to doctors and hospital personnel. If the ALJ requires additional evidence to make a disability determination, he should order consultative examinations to be performed at the expense of the Social Security Administration. *See* 20 C.F.R. § 404.1517(a) (1989).

*Bishop*, 900 F.2d at 1262.

Similarly, in "the Eleventh Circuit, the ALJ has the duty to develop a full and fair record even when the claimant is represented by counsel." *Yamin v. Comm'r of Soc. Sec.*, No. 6:07-cv-1574-ORL-GJK, 2009 WL 799457, at *12–14 (M.D. Fla. Mar. 24, 2009); *see Graham v. Apfel*,

129 F.3d 1420, 1422 (11th Cir. 1997); *Brown v. Shalala*, 44 F.3d 931, 934 (11th Cir. 1995) (ALJ's duty to develop a full and fair record exists whether or not the applicant is represented). In *Rease v. Barnhart,* 422 F. Supp. 2d 1334, 1372 (N.D. Ga. 2006), the court explained the connection between the claimant's burden and the ALJ's duty as follows:

> Although the burden of proof is on the claimant to prove disability, the ALJ is under a duty to conduct a full and fair inquiry into all the matters at issue. *Ford v. Secretary of Health and Human Services*, 659 F.2d 66 (5th Cir. 1981). Thus, in general, the claimant has the burden of obtaining his medical records and proving that he is disabled. 20 C.F.R. § 404.1512(a) and (c). On the other hand, the Commissioner (ALJ) has the responsibility to make every reasonable effort to develop the claimant's complete medical history, for at least the twelve months preceding the month in which the claimant filed his application and, if applicable, for the twelve month period prior to the month in which he was last insured. 20 C.F.R. § 404.1512(d).
> ...
> When the medical evidence is inadequate for the Commissioner to determine whether the claimant is disabled, the Commissioner has the responsibility to re-contact the claimant's treating physician(s) or other medical source(s) and determine whether the additional information the ALJ needs is available. 20 C.F.R. § 404.1512(e). If the additional needed medical evidence is not readily available, then the ALJ should obtain a consultative examination. 20 C.F.R. §§ 404.1517 and 416.917; *Sellers v. Barnhart,* 246 F. Supp. 2d 1201 (M.D. Ala. 2002); *Holladay v. Bowen*, 848 F.2d 1206, 1210 (11th Cir.1988); *Caulder v. Bowen*, 791 F.2d 872 (11th Cir. 1986); *compare Murray v. Heckler*, 737 F.2d 934 (11th Cir. 1984).

422 F. Supp. 2d at 1372. Further, facing illegible treatment notes and medical records, the court in *Yamin* explained its decision to remand as follows:

> While a claimant's failure to raise the argument to the district court that the ALJ failed to fully develop the record generally results in the waiver of that issue, if a court cannot determine whether substantial evidence supports the ALJ's decision, the case must be remanded. *See Robinson v. Astrue*, 235 F. App'x 725 (11th Cir. 2007) (holding claimant waived argument that ALJ failed to fully develop record when that argument was not raised in the district court); *Johnson v. Barnhart*, 138 F. App'x 266, 271 (11th Cir. 2005) (holding that if the Commissioner lacked sufficient evidence to

> make a disability determination remand is necessary). The Court
> has reviewed the entire record and was unable to comprehend a
> substantial portion of Dr. Kashfi's treatment notes. It is unclear and
> doubtful that the ALJ could have comprehended Dr. Kashfi's notes.
> Thus, it is unclear how the ALJ was able to discount Dr. Kashfi's
> opinions based upon his treatment notes. The Court finds the
> opinions of the Second and Eight[h] Circuits persuasive, and
> concludes that the case must be remanded without even reaching the
> arguments of the parties because Dr. Kashfi's treatment notes and
> Medical Source Statement are critical to determining whether
> substantial evidence existed to support the Commissioner's decision
> to deny Yamin's claims.

2009 WL 799457, at 13-14.

Here, as already noted, Dr. Taitt's treatment notes consist primarily of the selection of pre-printed choices in combination with handwritten notes, appearing both in sections designated for handwriting and also in the margins of the pre-printed pages. The handwritten portions of those notes are almost entirely illegible, and that illegibility prevents this Court from meaningfully reviewing the ALJ's decision and determining whether that decision is supported by substantial evidence. In making this determination, the Court is guided by the particular facts of this case, including the fact that Dr. Taitt is the only treating physician whose records were considered by the ALJ.

The Court has reviewed Dr. Taitt's treatment notes side-by-side with the ALJ's explanation of those notes. In doing so, it is clear that the ALJ's discussion of Dr. Taitt's notes is overwhelmingly a discussion of the checked boxes and circled pre-printed choices contained on Dr. Taitt's forms, and lacks a discussion of many of Dr. Taitt's actual handwritten notes. For example, the ALJ discussed Dr. Taitt's July 2, 2013 initial observations that Claimant "was cooperative, fully oriented, and could pay attention and remember, but he was also preoccupied and disheveled, with abnormal motor behavior, fair concentration, and rambling speech." R. 24. Of those descriptive terms, only the word "disheveled" – if indeed that was the word in the

treatment notes – is not the result of Dr. Taitt circling a pre-printed descriptor. *Id*. at 371. However, on the bottom portion of that same page of Dr. Taitt's July 2, 2013 notes is a section titled "Assessment," which contains six, entirely illegible, lines of handwritten notes. R. 371. Those handwritten "Assessment" sections are contained in several of Dr. Taitt's treatment notes, and they are almost entirely illegible. R. 367-70; 373. Thus, any opinions therein are not susceptible to meaningful review by this Court, nor is there any indication that the ALJ considered information contained within the "Assessment" portions of Dr. Taitt's treatment notes. And the "Assessment" section is not the only portion of Dr. Taitt's notes that are illegible. Throughout Dr. Taitt's treatment notes there is handwriting that defies the Court's ability to read or understand it. As such, the ALJ's decision not to discuss or weigh these "Assessments" and other handwritten notes is not subject to any kind of meaningful review by this Court.

Further, the Court is troubled by the ALJ's characterization of the GAF score assigned by Dr. Taitt. GAF stands for "Global Functional Assessment." Courts in this district recognize that GAF scores are of "questionable value in determining an individual's mental functional capacity." *See Wilson v. Astrue*, 653 F. Supp. 2d 1282, 1295 (M.D. Fla. Sept. 3, 2009); *Gasaway v. Astrue*, 2008 WL 585113 at *4 (M.D. Fla. Mar. 3, 2008). Nevertheless, GAF scores are routinely used by "mental health physicians and doctors ... to rate the occupational, psychological, and social functioning of adults." *See McCloud v. Barnhart*, 166 F. App'x 410, 413 n.2 (11th Cir. 2006) (citing American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders 32 (Text Revision, 4th ed.2000)). Further, an ALJ must consider all materially relevant evidence and "state with particularity the weight he gave the different medical opinions and the reasons therefor." *Sharfarz v. Bowen*, 825 F.2d 278, 279-80 (11th Cir. 1987); *see also* 20 C.F.R. §

416.920(a)(3) ("We will consider all evidence in your case record when we make a determination or decision whether you are disabled.").

Here, Dr. Taitt assigned Claimant a GAF score of 50 on at least five occasions – never more, and never less, so far as the Court can determine. R. 363; 366; 373; 385; 389. The ALJ gave that GAF score only "some weight" for reasons related to the consideration of GAF scores in general, but not because Dr. Taitt's opinion in relation to that score was somehow undermined by the medical evidence of record or Dr. Taitt's own treatment notes. In doing so, The ALJ described a GAF score of 50 as reflecting "moderate problems in social or occupational functioning." R. 24. This is simply wrong. "A GAF score of 41–50 indicates: "**Serious symptoms** (e.g., suicidal ideation, severe obsessional rituals, frequent shoplifting) **or any serious impairment in social, occupational, or school functioning** (e.g., no friends, unable to keep a job)." DSM–IV at 32 (emphasis in original)." *Norris v. Astrue*, 2012 WL 2577529, at * 3 (N.D. Ala. June 28, 2012) (quoting *Diagnostic and Statistical Manual of Mental Disorders*, 34 (4th Ed.)) ("DSM-IV"). Of course, a GAF score – by its very name – is an assessment of a person's ability to function. Here, the sections of Dr. Taitt's treatment notes titled "Assessment" are almost completely illegible. Thus, the Court has grave concerns that the ALJ's error in characterizing Claimant's GAF score as only reflecting moderate symptoms may have derived, in some way, from the fact that the ALJ – like this Court – could not read Dr. Taitt's handwritten "Assessment" and any medical opinions contained therein.

Because the Court is not capable of meaningfully reviewing the ALJ's decision given the illegibility of the treatment notes of Claimant's only treating physician, this matter must be remanded for further proceedings.

This issue is dispositive and therefore there is no need to address Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record); *McClurkin v. Soc. Sec. Admin.*, 625 F. App'x 960, 963 n.3 (11th Cir. 2015) (per curiam) (no need to analyze other issues when case must be reversed due to other dispositive errors).

## IV.   CONCLUSION.

For the reasons stated above, it is **ORDERED** that:

1. The final decision of the Commissioner is **REVERSED** and **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g); and

2. The Clerk is directed to enter judgment for Claimant and close the case.

**DONE** and **ORDERED** in Orlando, Florida on September 13, 2017.

DANIEL C. IRICK
UNITES STATES MAGISTRATE JUDGE

Copies to:

Counsel of Record

The Court Requests that the Clerk
Mail or Deliver Copies of this order to:

The Honorable Joseph A. Rose
Administrative Law Judge
c/o Office of Disability Adjudication and Review
SSA ODAR Hearing Ofc.
3505 Lake Lynda Drive
Suite 300
Orlando, Florida 32817-9801